The case on this morning's docket is the case of the people of the state of Illinois v. Frederica Lyles. We have Ms. Paige Strong for the appellant, and we have Mr. Kevin Sweeney for the appellee. Ms. Strong, you may proceed. Ms. Strong, I apologize. I have sinus infection, so my voice is going to come and go. If I start yelling at you, it's an accident. There are three things I want to tell you about this case. First of all, this is just heartbreaking. Everything about this case is heartbreaking. It's difficult to work off. It's a difficult fact situation. It's just sad. But the second saddest thing about this case is that no one in this case could ever admit that this was simply an accident. And as a result, the emotion involved with it, I'm sure, explains how we ended up in this position today, where we have someone convicted of drug-induced homicide without any evidence whatsoever that the actual drug that killed these children in the form the children claimed or killed this child and drugged these other children, in the form that these children claimed they were given pills, even existed, that it was ever prescribed to anyone in this house, or that anyone could have ever had access to such a thing. It is true that this little girl died because she had morphine in her blood.  However, the question, the only question the jury had to answer, was whether it was proven that this defendant actually delivered this drug to these children, or whether it was completely an accident because they got into it themselves or any number of other things. What the state proved is just that, that they had these children have morphine in their blood. They didn't prove anything else. They ask us now to justify, or they claim now that they can justify this conviction because that could have happened. This drug could have been here. It could have been in that format. What the children said could have been true. That's not enough to prove reasonable doubt. These children have claimed, these two older children testified that they were given white round pills by the defendant. We have proof that there were white round pills found in the house. There were every kind of pill in the world found in this house. And I should point out that these pills in the house were there for a legitimate reason. The man who lived in the house had sickle cell anemia and there were prescription upon prescription of all kinds of things for him. The defendant herself had some issues. So there were prescriptions for all kinds of drugs in this house. This is not just a drug den with every illicit thing you could possibly have laying around. There were legitimate reasons for these pills to be there. And they were everywhere. I mean, the house is littered with pills, with pill bottles, you name it, it's everywhere. But what we don't have is any evidence at all that these children were given the actual morphine sulfate that caused their problems, that they were given that by the defendant. The children testified inconsistently with their police statements and their videos on everything except one point. One point was they were given white round pills. Wasn't there testimony by some experts that white round pills in the form of morphine did exist and that there was a bottle that had no morphine tablets in it and put in a white round morphine pill? The forensic chemists testified that morphine can come in any color, in gray or white. Dr. Long testified, he specifically testified that it had to be morphine sulfate, not the hydromorphone that was also found in the house, so that at least narrows us down to exactly what kind of pill we're looking at. But what the evidence was, even from those experts, is these pills come in all kinds. Any different manufacturer on any given day might make a pill in purple, turquoise, and blue. My point is the fact that it's gone and maybe the kids ingested them all might mean just that. Ideally, had they brought in a pharmacist who said, yes, we sold white round morphine pills to this man to fill this prescription on this day, and they came in that bottle, we'd be in business. The state would have proven their case there. They didn't do that. They failed to bring in anybody who ever said this man had ever been dispensed any morphine sulfate in white round pill form, ever. They didn't even bring in a manufacturer who said, at the time that was relevant to this case, we even made white round pills. But we know that they ingested morphine. Right. And so the credibility issue by the children, your attack on that is that they're the wrong color. That is one of my attacks on that. They were consistent that they were given white round pills. The only pills that were tested that were white round pills were proven to be antihistamines. Nothing else in that house could be linked to a white round pill and morphine. Were there blood tests given to the children? Yes. Okay, now, what other drugs did they find besides morphine? They didn't bother to test. They didn't bother to test for any other drugs. Even after they found out there were, you know, X, Y, and Z kinds of pills in the house, they didn't bother to test for any of that. Now, I think there was two other questions. It took some time before 911 was called, and number two, one of the children was not in very good shape, and she kept not wanting to send the child to the hospital. Correct. Those two things are true. The state attempts to portray that as, you know, strong consciousness of guilt on this defendant's part. Read the PSI in this case. Look at this woman's history. This is not a calculating woman because she doesn't have the tools. We have no evidence that she knew that little girl was dead. We have no evidence. She was in another room. We don't know. We don't know that she knew for four or six hours and refused to call. We don't know that. We do have one of the little boy's testimonies that we all tried to wake her up, and she wouldn't wake up, and anyone else tried to wake her up, and we couldn't get her to wake up. Ultimately, 911 was called, and actually, we still don't know. I still don't know who called 911, but it was someone in that house. So we don't know that she didn't ultimately call. We don't know that. When the police and everyone else and the EMT is on the ride, she was holding the 2-year-old boy, and he was all wonky. He wasn't riding at all. He was going in and out of consciousness. Yeah, and he was all wobbly. And she said he was fine and they had to basically almost rip him out of her arm. Pretty much, yes, and she explained to them that he's just tired. He's fine. He was up all night, but that doesn't necessarily mean that she was hiding anything, because how do you hide a child who's going in and out of consciousness? This woman doesn't have the tools. She just doesn't have them. She's unwell. She's mentally ill. She's not intelligent. She's got a drug problem of her own. She's a disaster. She probably was just frightened. That doesn't necessarily mean that, I mean, if she wanted to hide this child, she would have hustled him out of the house before all the police got there. I mean, if she was a calculating sort, she would have cleaned all the pillows out of the entire house instead of leaving hundreds of them laying around under the bed on the floor in front of God and everybody. So, Ms. Strong, since we know that the kids all ingested morphine, we have to then believe that it was reasonable that all these children at the same time decided to ingest morphine. No, we don't. We don't have to believe that. We have to believe. We can believe what the little boys said. They said that they were given the white round pills. We have test results from the only white round pills they bothered to test, which is antihistamines. They didn't check the children's blood to determine if that was true or not, if there were antihistamines in their blood. So we don't know if the state could have done that. I'm not suggesting that every little kid in this place toddled around, picked up a white round pill, and had more than one. And was able to discern that from the rat poisoning and the other thousand of them? I'm not suggesting that. That's ridiculous. I think it's quite likely that these two little boys, who were, I believe, seven and nine at the age, very precocious, get-into-everything kind of age, maybe just one of them, I don't know, gets into a particular batch of something and starts passing them out. Here, you take it, you take it, you take it. I think that's quite plausible. Everyone knows how kids are. They do things. And then when they see what happens, they're certainly not going to say, yeah, we were having a good time with picking pills up. Something bad has happened. They're going to cover their butts. Any little kid would. Then they're terrified, I'm sure. We have as much proof that that is what happened as we have that this woman knowingly gave morphine to these children. Was there any testimony about, I know one, I saw one of the children had four times the fatal dose in their body. How many pills that would take and what they would taste like. I mean, generally, kids get-into-everything. But if something tastes that awful, they're not going to keep getting-into-it. Well, they talked about one of the, I think Dr. Long talked about how much a dose could be. They come in 10 milligrams, 100 milligrams. And for an adult who has a serious health issue like Cornell Hampton had, if he's popping 100 milligram pills, that doesn't, it's not going to faze him. If a two-year-old has a pill like that, she's done. You know, I mean, it's a different, there's like a tolerance level. Clearly, you know, a two-year-old is a little teeny something. A four-year-old is a little bitty something who's going to metabolize completely differently than an adult who takes this stuff all the time. But what it comes down to is we still have absolutely no proof that any white, brown, morphine, sulfate pills were ever even in this house, let alone ingested by these children because the defendant gave it to them. It's too many things in a row that the state's asking us to assume could have happened. That's even replete all through the state's brief. Well, certainly, though, the court is entitled to give more of a credibility finding to those two boys, even as young as they are, than this adult who, as you say, is not very with it. And I think we can believe, I absolutely think we should believe those little boys. Those little boys said, I took white, brown pills. When shown pictures of the orange and gray, blue morphine, they said, no, not those. I didn't take those. It was white, brown. Let's believe that. But wasn't, didn't the boy testify that she gave the pills to him, made him take the pills? This is a very important point I should have made from the beginning. The state says repeatedly that these children said she gave us morphine pills. Never have. Didn't one of the children say that? Never, the children never said she gave us morphine pills. No, I didn't say that. Gave them pills. Gave them pills, yes. And the white, brown pills, the only ones that were tested. Were those pills ever discovered that she gave them? They were in his, the only white, brown pills, one partially dissolved. No, I'm not talking white, brown pills. Did she ever say that she did or did they ever discover the other pills that she claimed she gave them? No. Okay. There was no, I mean, I'm not sure I understand the question exactly, but there was no. Was there a bottle partially full of pills that she claimed she gave them? No, no, no, no. Okay. Did she ever, did she ever say she ever gave them any pills? No, she didn't testify. Okay. So, absolutely not. So, all right. Thank you. And it's answered a lot of questions and you all had the opportunity for rebuttal. Thank you. Mr. Sweeney. Counsel for the defendant has told you that there's no evidence that this defendant gave morphine pills to these four children. Well, I don't know what she considers evidence, but I think two witnesses are evidence. Donnie McElroy, who was 11 years old at the time of the trial, testified that this defendant forced him to take pills. And he also testified, this is right in the statement of facts in the defendant's brief, that none of the children took any other pills. Now, okay, he didn't testify that these were morphine pills. He wasn't a forensic chemist. But if he testifies that the defendant forced him to take pills and that none of the kids took any other pills, defendant cites the page 418 of the record for that statement, then the pills that made all of the children sick had to be the ones that the defendant forced them to take. Now, did he say, or was it his brother, that he didn't really see the younger two take pills? Donnie McElroy did testify that he was forced to take pills, but he didn't see the other children take pills. However, Donasio Johnson testified that the defendant made all of the children take pills, and he furthermore testified that it was those pills that made him sick. That's at page 362 of the record. So it was those pills that made him sick, and the untested medical evidence is that these kids were sick from an overdose of morphine. Isn't that direct evidence that this defendant poisoned these four children? Now, the theory argued by Ms. Strong is that Donnie McElroy or Donasio Johnson decided to take pills on their own, and that they forced the dead girl Deanna, who was four years old at the time of her death, to take the pills, and two-year-old Deontes, who nearly died, to take the pills. Well, that is supported by zero evidence. There is no evidence in the record that that happened, and there's Donnie and Donasio testifying it didn't happen. So the jury didn't have to believe a defense theory of innocence, which is A, supported by no evidence, and B, contradicted by two witnesses. Now, this is not a case in which we rely entirely on circumstantial evidence. It's a case in which we rely on the testimony of two victims plus circumstantial evidence. Now, the circumstantial evidence is that all four children, ages 9, 8, 4, and 2 at the time of Deanna's death, had high dosages of morphine in their system. Now, if one child has morphine in his system, well, maybe he took pills on his own. Two children, unlikely. Four children, it's not a reasonable theory of evidence, or of innocence. It's not a reasonable theory that all four children are going to take an overdose of morphine from among the thousands of pills scattered around the house. Now, both in the defense brief and in the oral argument, a whole bunch is being made about the color of the pills, about white pills versus orange-tinged pills versus gray pills. Well, I'm afraid I'll have to introduce another fellow. It's just a red herring. There's the state's theory, which is that the defendant forced these children to take these morphine pills, which is supported by direct and circumstantial evidence. And there's the defense theory, which is that Johnny D'Arnazio took it on their own and made Deanna and Deonta take it, which is supported by nothing. Now, what does the color of the pills have to do with that? Everyone agrees that Johnny D'Arnazio, Deanna, and Deonta took morphine pills. What does the color matter? If they took them on their own, they would have had less reason, not more reason, to be mistaken about the color of the pills. I mean, the morphine pills actually found in bottles in the house were orange-tinged and gray, which could be mistaken for white. There was an empty bottle, which could have contained white pills. There were thousands of other pills in the house, or at least hundreds of other pills in the house. We don't know what color the morphine pills taken by the children were, but it's not relevant to reasonable doubt. Everyone agrees that they took pills, so it doesn't matter whether Johnny or D'Arnazio thought they were white when they weren't or whether they actually were white. It matters not at all. A few minor points. The children were tested for other controlled substances. D'Arnazio had hydromorphine, which is different from the kind of morphine that was killed Deanna and was found in the other children, and also oxycodone, which is an opiate in his system, showing that this wasn't the only time, or at least not the only drug that was used to poison them. And when the 911 was called, or at least when the paramedics arrived, Deanna, the dead four-year-old girl, was already in a rigor mortis, meaning, it's agreed, that she was dead four to six hours. And Deanna was eventually in the defendant's lap, in and out of consciousness, as it turned out, suffering from what would have been a fatal dose of morphine had he not been treated. I think the jury could reasonably conclude the defendant knew that Deanna was dead after four to six hours, that she had been dead for four to six hours, and the body was showing signs of rigor mortis. I think the jury could reasonably conclude that the reason the defendant didn't want Deanna taken to the hospital was that she knew that they would discover at the hospital that the kid had a high dose of morphine in his system. I mean, the jury was the prior effect. It was up to them to decide whether to believe Johnny. It was up to them to decide whether to believe Ignacio. It was up to them to decide whether the defendant's conduct showed a consciousness of guilt. It was up to them to decide whether the color of the pills made any difference. They found, after a very short period of deliberation, less than four hours, that the defendant was guilty as charged. As for issue number two, I will simply remind the court, since it's not very prominently featured in the defendant's brief, that Mr. Kuhn, the defense lawyer, stipulated to the admission of the video recording in question of the boy's statement about what had happened to him, taken shortly after the offense. He stipulated and said he was doing it as a matter of trial strategy. That's a lot stronger than wavering. You can't ask the court to do something at the trial level and then turn around on appeal and say the court erred in doing what the defense asked it to do. So we ask that the conviction be affirmed. Thank you, Mr. Kuhn. Ms. Strong. I just have a few points. I think it is kind of insincere to suggest that we have to take these children's testimony as gospel, that she gave them the pills and they didn't take any on their own. But on the other hand, it's completely disregarded one thing they were consistent on from beginning to end, which is she gave us white round pills. So believe what helps us and don't believe what doesn't help us. That doesn't make any sense to me. This would have been a clean case had they taken that empty bottle that they're now saying contained the magic white morphine pills, called that pharmacy, brought that pharmacist in and said, yes, I filled that with white round pills made by Malaprof or Waltham or whomever, because that's what we're dispensing during the month that we filled that. That would have been a clean case. They didn't do that. Why didn't they do that? Did they not do that because no such pharmacist would say that? Did they not do it because they were lazy?  They didn't test everything they had. The state suggests that's because it was just too much. This is a drug abuse homicide case. There's no such thing as too much. This woman's in prison for 31 years, and we're supposed to keep her there, even though the state skipped big steps like proving this drug was ever in the house in the form that these children said it was in? Of course the fact that these were white round pills is absolutely vile to this case. What if the children were wrong about that and they didn't just spray pills? Could the jury still find them more credible witnesses than the defendant? They were mistaken. They were confused. They thought they were white. What would that have been based on, though? They specifically denied, I took a pill that looked like that. It would have shown the gray pills and the orange pills. They denied that specifically. So where would you come up with a way to completely discount that? It doesn't make any sense. Well, people at accidents think cars are blue and they're red. I mean it happens all the time. That's all I'm saying. I'm just saying that I think that it's possible that they still could have given the children's testimony more credibility than the defendants. I think in a case like this that is super emotional, I think that there's a lot of room to believe things and attribute credibility here and there that is not necessarily called for or supported by the evidence, and that's why it is so important to be impartial when reviewing. The evidence is actually presented as it was presented as opposed to what might have happened. I mean this whole case is about what could have, might have, did have happened, and that's not proof beyond reasonable doubt. Maybe the morphine fairy dropped the stuff down the fireplace. I don't know. We have as much evidence of that as we have of what actually went on in this house, and jumping to conclusions and assuming it had to be this way is not proof beyond reasonable doubt. It's just not enough. And there were so many ways they could have proved. We don't even know that that empty bottle we keep talking about was ever filled with morphine in the first place. It could have been a muscle relaxer. It could have been any number of things. I don't believe there was any evidence that this was an empty bottle that ever contained morphine. Was that bottle ever put into evidence? I'm sorry. Go ahead and answer. You know what? I have all this stuff. I think it's exhibit – this is complicated with how many exhibits there were. Let's see. Exhibit 48 was – or people's exhibit 4575A was morphine by – manufactured by Watson. 5B was hydromorphine by Mallinckrodt. I don't know the succinctness of that bottle off the top of my head right now, but I do know that if it has a pharmacy label on it, how easy would it be to go back and confirm with that pharmacy what form – what you put in this bottle. And when did you put it in there? Is this a year-old bottle that had, you know, 16 morphine pills and has been empty for God knows how long? I don't know. We don't know that because the state didn't prove any of that, and that's kind of their job. It's not really the defendant's job to prove to you that the kids were lying about what they picked up and what they didn't. It's not the defendant's job to do that. It's the state's job to prove that didn't happen and to prove that she did something, and they just let them do it because they skipped entirely too many steps by bootstrapping what could have, might have, maybe did happen, and that's not proof to me that she did something. Should I ask that you reverse your position? Thank you, Ms. Cron and Mr. Sweeney. Thank you both for arguments and briefs, and we'll take it under advisement.